# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HOWARD CARTER (B36672), ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 18 C 6390 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| ) | |
| WALTER NICHOLSON, Warden, ) | |
| Stateville Correctional Center, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Howard Carter has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his state criminal convictions for first degree murder. Stateville Correctional Center Warden Walter Nicholson, respondent, has filed a motion to dismiss the petition as untimely. For the reasons set forth below, the Court grants the motion, dismisses the petition, and terminates this case.

## Background

On October 30, 1998, petitioner was convicted of two counts of first degree murder, one count of attempted first degree murder, and one count of unlawful discharge of a firearm. (Pet. at 1, ECF No. 8.) *See People v. Carter*, 100 N.E.3d 460, 469 (Ill. App. Ct. 2017). He was subsequently sentenced to natural life imprisonment on the two murder counts, plus fifteen years' imprisonment on the attempted murder count. *Id.*

The Court will only briefly summarize the most relevant evidence here; the Illinois Appellate Court has described petitioner's trial and post-conviction proceedings in greater detail elsewhere, *see id.* at 462-477. Petitioner was a high-ranking member, a "chief," of the Undertaker

Vice Lords street gang, which had split into warring factions. On October 22, 1995, a pedestrian fired numerous gunshots into a vehicle on Ferdinand Street, near Lockwood Avenue in Chicago, which was carrying three passengers: Devol Scott and Allen Williams, both members of the Undertaker Vice Lords, and Patrick Davis, a member of a different street gang. Scott and Davis were killed, but Williams survived. Williams testified at trial that he recognized petitioner as the shooter. He admitted that he had initially refused to cooperate with the police, explaining that he had been angry and upset at the time and intended to seek revenge, but a couple of days after the shooting, he decided to cooperate with police and changed his story. According to Williams, the day before the shooting, petitioner had asked Williams, Scott, and Kenneth Beecham, another member of the gang, to help him get revenge on an Undertaker Vice Lord, "Mike-Mike," with whom he was feuding. Scott told petitioner that they were not involved in his feud and would not help him. Beecham corroborated Williams's account of this exchange.

Tyrone Randolph, a member of a rival gang, testified before a grand jury that he had been at the scene of the shooting, and he identified petitioner as the person who had fired the shots into the car. At trial, he recanted, claiming that a police officer had promised to drop drug charges against him if he implicated petitioner, but to charge him with another drug crime if he did not implicate him. The transcript of Randolph's grand jury testimony was admitted as substantive evidence against petitioner. Other evidence showed that Randolph had previously given statements about the shooting to law enforcement in October 1995, a few days after the shooting occurred, and then again about a year later; these statements were consistent with his grand jury testimony.

2

Following trial and sentencing, petitioner appealed, claiming that the State failed to prove him guilty beyond a reasonable doubt, his sentence was excessive, and it had been improperly enhanced in violation of his due process rights under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Carter*, 100 N.E.3d at 469. In 2002, the appellate court modified his sentences to run concurrently, not consecutively, and affirmed his convictions, explaining that "'[t]he trial court considered Randolph's credibility as well as the circumstances surrounding his testifying and determined that the grand jury testimony was believable while the in-court testimony was not. The trial court also determined that Williams'[s] explanation for changing his story was reasonable.'" *See Carter*, 100 N.E.3d at 469 (quoting *People v. Carter*, No. 1-99-2230, slip order at 6-7 (Ill. App. Ct. Mar. 11, 2002)).

Subsequently, petitioner filed a petition for leave to appeal to the Illinois Supreme Court, which was denied on October 2, 2002. *See id.* Petitioner did not seek a writ of certiorari from the United States Supreme Court. (*See* Pet. at 2.)

On July 28, 2005, petitioner filed a petition for post-conviction relief, which proceeded to a second-stage review. *Carter*, 100 N.E.3d at 469. On March 18, 2010, court-appointed counsel filed an amended petition, claiming ineffective assistance of trial counsel for not allowing petitioner to testify at trial and actual innocence based on affidavits of two newly discovered eyewitnesses, Antonio McDowell and Vaughan Peters. *Id.* McDowell and Peters were fellow Undertaker Vice Lords who swore that another Undertaker Vice Lord known as "Volli" committed the shooting for which petitioner was convicted, and petitioner was not even at the scene at the time of the shooting. *Id*. at 469-70, 472.

The state post-conviction court initially dismissed petitioner's amended petition, and the Illinois Appellate Court affirmed with respect to the ineffective assistance claim. However, the appellate court reversed the decision on petitioner's actual innocence claim and remanded for an evidentiary hearing. *People v. Carter*, 2013 IL App (1st) 110046-U, ¶¶ 76-96. On remand, the post-conviction court dismissed the petition after a hearing, finding that McDowell and Peters had not testified credibly, and their testimony probably would not change the result on retrial. *Carter*, 100 N.E.3d at 477. In particular, the post-conviction court found it incredible that McDowell and Peters observed the shooting but did not learn that petitioner was prosecuted and convicted in the matter until years later:

> The [post-conviction] court found that it defied logic to think that McDowell and Peters were completely oblivious to the fact that [petitioner] had been convicted of first degree murder. Based on their status as fellow gang members and eyewitnesses, McDowell and Peters both had an interest in learning who had been implicated, and their testimony that they never sought out this information was highly incredible. The trial court also observed that McDowell personally knew [Allen] Williams, who testified as a State's witness against [petitioner].

*Carter*, 100 N.E.3d at 477.

Petitioner appealed the dismissal, and on December 28, 2017, the Illinois Appellate Court affirmed. *Carter*, 100 N.E.3d at 482. The appellate court explained that McDowell and Peters had admitted at the post-conviction hearing that they knew petitioner had been arrested for the crime, and it could find no error in the post-conviction court's ruling that it was simply not believable that two gang members in their position would not have come forward earlier, if their accounts were truthful:

> McDowell and Peters were both friends of defendant; they all belonged to the same gang and had hung out together prior to the night of the shooting. Therefore, the [post-conviction] court reasoned, McDowell and Peters had a significant interest in learning who had been implicated in the shooting, and their testimony that they

4

> never knew of defendant's conviction until years later was incredible. Furthermore, McDowell and Peters both personally knew Allen Williams, the attempted murder victim, who was a member of their gang and a State's witness against defendant. The [post-conviction] court found it incredible that neither McDowell nor Peters would have an interest in a case where a member of their own gang took the stand against their former leader.

*Carter*, 100 N.E.3d at 481. McDowell's stated reason for not coming forward earlier—that he feared reprisal by Volli—was later contradicted by McDowell himself, who admitted on re-cross that "Volli actually was not a threat." *Id.*

Petitioner sought review by the Illinois Supreme Court, but the court denied his petition for leave to appeal on March 21, 2018. (Resp't's Mot. to Dismiss, Ex. B, ECF No. 11-2.) Petitioner did not seek a writ of certiorari from the United States Supreme Court. (*See* Pet. at 2-4.)

## **Discussion**

To be timely, a § 2554 petition must be filed, as relevant here, within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Because petitioner did not seek a writ of certiorari from the Supreme Court, his conviction became final when the time for doing so expired, *i.e.*, December 31, 2002, ninety days after the state supreme court denied his petition for leave to appeal. *See* S. Ct. R. 13 ("[A] petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment. A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review."); *Smith v. Battaglia*, 415 F.3d 649, 652 (7th Cir. 2005) ("Smith's conviction became final on January 2, 1996, which was the time when his opportunity

5

to file a petition for certiorari from the Illinois Supreme Court's decision denying leave to appeal expired."). Thus, absent tolling or an exception, the limitations period for petitioner's petition expired on December 31, 2003, approximately fifteen years before he filed this petition.

There are three potential avenues for proceeding on an otherwise untimely § 2254 habeas petition: (1) statutory tolling; (2) equitable tolling; and (3) actual innocence. Statutory tolling applies during "the time [in] which a properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2). Statutory tolling does not apply here because, at the time the limitations period expired, petitioner had not yet filed any state post-conviction petition, nor would he for another year and a half.

Equitable tolling comes into play when the petitioner proves "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The "extraordinary circumstance" must be some sort of "external obstacle" in the sense that it is "outside [or] beyond [his] control." *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 756 (2016) (citing *Holland*); *Lo v. Endicott*, No. 04-C-133, 2006 WL 2473331, at *2 (E.D. Wis. Aug. 24, 2006) ("Generally, such 'extraordinary circumstances' involve wrongful conduct against the petitioner."). Such circumstances may include abandonment or misconduct by counsel (but not mere negligence), mental or physical disability, lack of access to a prison library or legal materials, or lack of notice of a court decision or deadline. *See* Brian Means, *Federal Habeas Manual*, §§ 9a:102-117. Courts must apply a "'flexible' standard that encompasses all of the circumstances [and their] cumulative effect . . . 'with awareness of the fact that specific circumstances, often hard to predict in advance, could

warrant special treatment in an appropriate case." *Socha v. Boughton*, 763 F.3d 674, 686 (7th Cir. 2014) (quoting *Holland*, 560 U.S. at 650). Even applying that "flexible" standard, petitioner has not pointed to any external obstacles or wrongful impediments akin to or resembling those that courts have found to equitably toll § 2244(d)(1)(A)'s statute of limitations.

That leaves actual innocence, which is the doctrine petitioner principally relies on. Under that doctrine, courts recognize an equitable "exception" to the limitations period if the petitioner "'persuades the district court that, in light of . . . new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). A "'credible'" claim of actual innocence, the Supreme Court has said, "requires 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup*, 513 U.S. at 324). "In evaluating the claim, the court is to conduct a comprehensive assessment that takes into account any reliable evidence probative of petitioner's innocence or guilt . . . . It is not the court's role to determine independently what the petitioner likely did or did not do; rather, its task is to assess the likely impact of the new evidence on reasonable jurors." *Arnold v. Dittmann*, 901 F.3d 830, 837 (7th Cir. 2018) (citing *Schlup*, 513 U.S. at 327-29). "'[T]he habeas court must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial.'" *House*, 547 U.S. at 538 (quoting *Schlup*, 513 U.S. at 327-28). A "delay or lack of diligence by the petitioner in pursuing his claim of actual innocence is not a bar to the claim," but "it is among the

factors that the court may consider in assessing the merits of the claim." *Arnold*, 901 F.3d at 837 (citing *McQuiggin*, 569 U.S. at 388-400).

Petitioner's actual innocence claim is based on the affidavits of McDowell and Peters, who claim that petitioner was not at the scene of the crime and that they saw another man, "Volli," on the scene with a gun at the time of the shooting; McDowell claims to have actually seen Volli fire the fatal shots. This evidence does not meet the Supreme Court's high standard for claims to pass through the actual innocence gateway. First, McDowell and Peters's accounts of the crime merely compete with the inculpatory accounts provided by Allen Williams and Randolph, which the trial court found to be credible—and this court owes deference to that finding. *See* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus[,] . . . a determination of a factual issue made by a State court shall be presumed to be correct"); *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)) (habeas petitioner seeking to overcome adverse state-court factual determination must "show that the state court determined the underlying factual issue against the clear and convincing weight of the evidence."). Even if McDowell and Peters's testimony seemed credible, it would be set against conflicting evidence that is also credible, which would leave the jury with nothing more than a "classic swearing match." *Bosley v. Cain*, 409 F.3d 657, 665 (5th Cir. 2005). Some jurors might harbor reasonable doubt based on such conflicting accounts, but it does not follow that "no juror, acting reasonably," could vote to convict. *Id.* (actual innocence standard not met where newly discovered evidence merely puts conflicting "testimony . . . in equipoise"); *see Moore-El v. Luebbers*, 446 F.3d 890, 903 (8th Cir. 2006) (citing *Bosley*) (newly discovered evidence insufficient where it merely "establish[es] conflicting testimony among purported eyewitnesses to

8

the murder" that would require the jury "to weigh credibility, just as it did with the trial witnesses, to determine whether there was reasonable doubt"); *see also Davis v. Bradshaw*, 900 F.3d 315, 328-334 (6th Cir. 2018) (post-conviction recantation of murder eyewitness did not present credible actual innocence claim where there was other evidence to corroborate the witness's inculpatory version of events); *cf. Arnold*, 901 F.3d at 840 n. 7 (distinguishing *Davis* and like cases in which "the newly proffered evidence of innocence did not by itself exonerate the petitioner or there was additional evidence of the petitioner's guilt").

It seems that at least some jurors, weighing the evidence, would believe the inculpatory accounts of Williams and Randolph, which the trial court found to be credible, over the exculpatory accounts of McDowell and Peters, which the post-conviction court found not to be credible. *See Allen v. Yukins*, 366 F.3d 396, 406 (6th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1) (co-defendant's exculpatory affidavit insufficient to meet actual innocence exception because, even "[a]side from its lack of reliability," it is "contradicted by the evidence at trial"). As the Court has explained, the state courts' credibility determinations are entitled to deference unless they are against the clear and convincing weight of the evidence, and this Court can no more say that they are against the "clear and convincing" weight of the evidence than the Illinois Appellate Court could say that they were manifestly erroneous, *see Carter*, 100 N.E.3d at 469, 481-82.

Further, even if the Court were not required to give deference to the state courts' factual determinations, it finds the reasoning of those decisions persuasive. Not only, as the post-conviction courts explained, is it hard to believe that McDowell and Peters failed to come forward earlier because they did not know of petitioner's conviction, but also the timing is suspicious because they came forward only after Volli's death. There was evidence at the post-conviction

9

hearing that "Volli" was a man named Savalas Brewer, who died in 2003—and therefore was immune to prosecution by the time petitioner filed his post-conviction petition, along with McDowell and Peters's affidavits, in 2005. At least some jurors might find this timing suspicious, as if the parties had concocted the Volli story because his death gave petitioner an "empty chair" defense, *see United States v. Morales*, 994 F.2d 386, 389 (7th Cir. 1993). The Court cannot say that no reasonable juror could have believed the testimony of a surviving victim and another eyewitness over the testimony of two fellow gang members who did not come forward until ten years after the crime had taken place, conveniently after the fellow gang member they are now accusing had already died—particularly where the evidence was, at best, inconsistent on whether that gang member was a threat to testifying witnesses while alive, *see Carter*, 100 N.E.3d at 472-73, 81.

In closing, the Court notes that even if petitioner could adduce sufficiently reliable newly discovered evidence to open the actual innocence gateway, it is not clear that he has a valid substantive claim to pass through it. Construing the petition and briefs liberally because petitioner is proceeding *pro se*, they contain three claims: (1) the prosecution knowingly relied on perjured testimony; (2) the state courts misapplied state law in assessing petitioner's actual innocence claim under the Illinois Post-Conviction Hearing Act; and (3) petitioner is actually innocent. The first claim appears to be mere conjecture, as petitioner does not point to any evidence that prosecutors actually knew that Allen Williams and Tyrone Randolph were lying when they testified that petitioner fired the fatal shots. "'Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony.'" *Shasteen v. Saver*, 252 F.3d 929, 933 (7th Cir. 2001) (quoting *United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990)).

The second claim likely does not present a cognizable ground for relief because "errors in state collateral review cannot form the basis for federal habeas corpus relief," except where "state collateral review violates some independent constitutional right, such as the Equal Protection Clause." *Montgomery v. Meloy,* 90 F.3d 1200, 1206 (7th Cir. 1996). Petitioner has not pointed to any discrimination or other independent constitutional deprivation in his post-conviction proceedings; he simply argues that the post-conviction court reached the wrong result under state law, which provides no basis for § 2254 relief by itself, particularly considering that "it is well established that the Constitution does not guarantee any postconviction process, much less specific rights during a postconviction hearing." *Flores-Ramirez v. Foster*, 811 F.3d 861, 866 (7th Cir. 2016). Finally, "[n]either the Supreme Court nor [the Seventh Circuit] has yet indicated that an actual innocence claim could, standing alone, support the issuance of a writ" of habeas corpus, given that, "[t]o date, an assertion of actual innocence based on evidence post-dating a conviction has not been held to present a viable claim of constitutional error."[1] *Arnold*, 901 F.3d at 837.

But the Court need not and does not reach the merits of the petition. Petitioner has not established any basis for tolling the applicable statute of limitations, nor has he shown that his claim meets the high standard for applying the actual innocence exception. His habeas corpus petition is time-barred.

---

[1] This could change in the near future, depending on the outcome of the evidentiary hearing on remand in *Arnold*, 901 F.3d at 842 ("If, upon hearing and weighing the evidence, the district court concludes that no reasonable juror would have found Arnold guilty beyond reasonable doubt in view of M.A.'s recantation, then . . . it will be necessary to consider whether his freestanding claim of actual innocence presents a viable claim for relief in habeas and what standard of proof Arnold would have to meet in order to prevail on that claim.").

**Conclusion**

For the reasons set forth above, the Court grants respondent's motion to dismiss petitioner's § 2254 petition as untimely [11], dismisses the petition, and terminates this case.

**SO ORDERED.**                                    **ENTERED: August 27, 2019**

 

_____
**HON. JORGE ALONSO**
**United States District Judge**